**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| IN RE: | CASE NO. | 18-51613 (JAM) |
| MICHAEL J. PARRELLA and KAREN KIMBLE-PARRELLA, Debtors. | CHAPTER | 11 |
| JERROLD METCOFF and DAVID WILSON, Plaintiffs, vs. MICHAEL PARRELLA, Defendant. | ADV. PRO. NO. RE: ECF NO. | 19-5008 (JAM) 23 |

**APPEARANCES**

| | |
|---|---|
| Michael Berman<br>Suzanne Gilleese<br>Berman and Sable LLC<br>100 Pearl Street, 4th Floor<br>Hartford, CT 06103 | *Attorneys for the Plaintiffs* |
| Gary J. Greene<br>Greene Law, P.C.<br>11 Talcott Notch Road<br>Farmington, CT 06032 | *Attorney for the Defendant* |

**MEMORANDUM OF DECISION AND ORDER GRANTING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Julie A. Manning, Chief United States Bankruptcy Judge

**I.    BACKGROUND**

On March 15, 2019, Jarrold Metcoff and David Wilson (the "Plaintiffs") commenced this

adversary proceeding against Michael Parrella (the "Defendant") by filing a two-count complaint

(the "Complaint"). The Complaint seeks a determination that a prepetition state court judgment entered in favor of the Plaintiffs against the Defendant is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Before the Court is the Plaintiffs' Motion for Summary Judgment on both counts of the Complaint. ECF No. 23. For the reasons that follow, the Motion for Summary Judgment is granted.

## II.    JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceeding pursuant to 28 U.S.C. § 1334(b). The Bankruptcy Court derives its authority to hear and determine this matter pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

## III.    UNDISPUTED FACTS

Rule 56(a)(1) of the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut[1] requires that a party moving for summary judgment file a Local Rule 56(a)(1) Statement of Undisputed Material Facts. *See* D. Conn. L. R. 56(a)(1). Local Rule 56(a)(2) requires that a party opposing a motion for summary judgment file a Local Rule 52(a)(2) Statement of Facts in Opposition to Summary Judgment. *See* D. Conn. L. R. 56(a)(2). Each material fact set forth in a movant's Statement of Undisputed Material Facts and supported by the evidence "will be deemed to be admitted (solely for the purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule…" *See* D. Conn. L. R. 56(a)(1); *see also*

---

[1] Local Rule of Bankruptcy Procedure 7056-1 adopts the United States District Court for the District of Connecticut's Local Rule 56.

*Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 746-747 (Bankr. D. Conn. 2014). Here, the Plaintiffs filed the Local Rule 56(a)(1) Statement of Undisputed Material Facts along with the Motion for Summary Judgment (the "Plaintiffs' Rule 56(a)(1) Statement"). The Defendant, however, has not responded to the Motion for Summary Judgment and has failed to file a Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment. Therefore, the material facts set forth in the Plaintiffs' Rule 56(a)(1) Statement supported by the evidence are deemed admitted.

The Court finds the following undisputed facts:[2]

1. The Plaintiffs are principals of a company known as Midcore Software Inc. ("Midcore"), which develops and markets computer software.

2. The Defendant is the chief executive officer of NCT Group, Inc. ("NCT Group").

3. On August 29, 2000, the Plaintiffs and the Defendant (on behalf of NCT Group) executed a merger agreement for Midcore to be acquired by NCT Group (the "Merger Agreement").

4. Under the terms of the Merger Agreement, Midcore would become NCT Midcore and the Plaintiffs would be entitled to receive NCT Group stock and certain royalties generated from the sale of Midcore products.

5. On April 10, 2014, the Plaintiffs commenced a civil action in Connecticut Superior Court, *Metcoff v. NCT Group, Inc. et al*, CV-04- 0184701-S (the "State Court Action"), by filing a 19-count complaint against NCT Group, the Defendant, and other entities. Complaint at ¶ 39. In the State Court Action, the Plaintiffs brought claims against the Defendant in his

---

[2] All facts are taken from the Plaintiffs' Rule 56(a)(1) Statement and the exhibits attached to the Motion for Summary Judgment unless otherwise indicated.

individual capacity, as well as against other entities including NCT Group and NCT Midcore, for damages related the Merger Agreement. In particular, the Plaintiffs alleged that they did not receive the stock or royalties promised under the Merger Agreement and that the Defendant made false representations to the Plaintiffs as part of the merger transaction. The Plaintiffs' claims brought in the State Court Action against the Defendant in his individual capacity included a claim for intentional misrepresentation and a claim for violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq*., ("CUTPA").

6. On May 19, 2004, the Defendant appeared in the State Court Action through counsel.

7. On June 21, 2006, the Plaintiffs filed a Second Substitute Complaint in the State Court Action. Complaint at ¶ 41. The Second Substitute Complaint continued to assert the intentional misrepresentation and CUTPA claims against the Defendant in his individual capacity.

8. Specifically, Count Thirteen of the Second Substitute Complaint asserted a claim for intentional misrepresentation against the Defendant (and other entities), in which the Plaintiffs alleged the following against the Defendant:

   a. The Defendant individually executed the Merger Agreement on behalf of NCT Group with respect to the proposed merger of Midcore with and into NCT Midcore as the surviving corporation;

   b. Through the warranties and representations set forth in paragraph 9(b) of the Merger Agreement, NCT Group, through the Defendant, represented and warranted that upon the merger, NCT Midcore would operate like Midcore and would continue the business of Midcore;

    c. The Defendant's representations as to NCT Midcore's business were false and/or misleading statements of material facts and were made by the Defendant for the purpose of inducing the Plaintiffs to act on the warranties and representations;

    d. The Defendant knew that the representations and warranties as to NCT Midcore's business were false and/or misleading;

    e. The Plaintiffs reasonably and justifiably relied to their detriment on these representations and warranties.

9. Count Twenty-Four of the Second Substitute Complaint asserted a claim for a violation of CUTPA against the Defendant (and other entities), in which the Plaintiffs alleged the following against the Defendant:

    a. The Defendant's course of conduct occurred in the conduct of trade or commerce as defined in CUTPA, and in his primary business, trade or commerce;

    b. By his conduct, the Defendant engaged in an unfair, deceptive, immoral, oppressive and/or unscrupulous practice in the conduct of his primary business, trade or commerce, that was not incidental to his primary business, trade or commerce;

    c. As a result of the Defendant's unfair, deceptive, immoral, oppressive and/or unscrupulous conduct, the Plaintiffs suffered ascertainable losses of money or property.

10. In March 2010, the Plaintiffs' claims in the Second Substitute Complaint were tried before a jury.

11. The Defendant was represented by counsel at the trial and he appeared and testified at the trial.

5

12. On April 21, 2010, the jury reached a verdict in favor of Plaintiffs and against the Defendant on Count Thirteen for intentional misrepresentation regarding continuing the Plaintiffs' business after the merger, and on Count Twenty-Four for violations of CUTPA through intentional misrepresentation regarding continuing the Plaintiffs' business after the merger (the "Verdict"). *See* Exhibit O in support of the Motion for Summary Judgment.

13. The Verdict also contained an award of punitive damages against the Defendant with respect to Count Thirteen. *See id.*

14. On April 21, 2010, the Superior Court accepted and recorded the Verdict.

15. In July and August 2010, the Superior Court held a post-trial proceeding on the issue of awarding punitive damages and attorney's fees under CUTPA and punitive damages under common law against the Defendant and in favor of the Plaintiffs.

16. On February 17, 2011, the Superior Court issued a Memorandum of Decision and Judgment on the Verdict and on the Second Substitute Complaint (the "State Court Judgment"). *See* Exhibits P and Q in support of the Motion for Summary Judgment.

17. The State Court Judgment entered judgment against the Defendant as follows:

   a. On Count Thirteen, intentional misrepresentation: Judgment enters in favor of plaintiff Jerrold M. Metcoff, for $113,855.00, plus $8,544.50 for punitive damages and in favor of plaintiff David B. Wilson for $143,434.00, plus $8,544.50 for punitive damages, and against the defendants, Michael J. Parrella, Sr. and others;

   b. On Count Twenty-Four, violation of the Connecticut Unfair Trade Practices Act: Judgment enters in favor of the plaintiff Jerrold M. Metcoff for $113,855.00, plus $270,000.00 for attorney fees and $128,644.50 for punitive damages, and in favor

        of David B. Wilson for $143,434.00, plus $270,000.00 for attorney fees and $128,644.50 and against the defendant Michael J. Parrella, Sr., and others. *See id.*

18.    On March 8, 2011, the Defendant appealed the State Court Judgment to the Connecticut Appellate Court. The Connecticut Appellate Court affirmed the State Court Judgment on August 21, 2012. *See Metcoff v. NCT Group, Inc.*, 137 Conn. App. 578 (2012); *see also* Exhibit S in support of the Motion for Summary Judgment.

19.    On September 11, 2012, the Defendant filed a petition for certification with the Connecticut Supreme Court. On October 23, 2013, the Connecticut Supreme Court denied the petition for certification. *See Metcoff v. NCT Group, Inc.*, 307 Conn. 924 (2012); *see also* Exhibit R in support of the Motion for Summary Judgment.

20.    The State Court Judgment is a final judgment.

21.    The State Court Judgment remains wholly unsatisfied.

22.    Interest accrues on the State Court Judgment at the rate of 4% per annum since February 17, 2011. *See* Plaintiffs' Rule 56(a)(1) Statement at ¶ 25; *see also* Proofs of Claim 9-1 and 10-1 filed in Case No. 18-51613.

23.    The Defendant and Karen Kimble-Parrella filed a voluntary Chapter 11 Petition on December 11, 2018. *See* Case No. 18-51613.

24.    The Plaintiffs commenced this adversary proceeding against the Defendant on March 15, 2019.

25.    The Defendant filed an Answer with Affirmative Defenses (the "Answer") on May 10, 2019. ECF No. 9. In the Answer, the Defendant admits the Second Substitute Complaint maintained the above claims, admits that the Verdict was accepted and recorded in

the State Court Action, and admits that the State Court Judgment is a final judgment. *See* Answer at ¶¶ 42, 48, 50.

26.     The Answer asserts four affirmative defenses: (1) the Plaintiffs received funds from the Defendant through a garnishment order which must be credited to the amount claimed to be nondischargeable; (2) the principal damages of $113,855.00 constitute identical damages that should be allowed only once per plaintiff; (3) the Plaintiffs' claims are barred by the doctrine of unclean hands; and (4) the Plaintiffs' claims are barred by the Plaintiffs' intentional and calculated campaign to defame the Defendant, his businesses, and his business associates. *See* Answer.

27.     On October 29, 2019, the Court granted the Plaintiffs' Motion to Strike the Defendant's third and fourth affirmative defenses. *See* ECF No. 21.

28.     The Plaintiffs filed the Motion for Summary Judgment on August 12, 2020.

29.     Pursuant to D. Conn. L. R. 7(a)(2), the Defendant's response to the Motion for Summary Judgment was due by September 2, 2020. No response was filed.

## IV.     SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) is made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56 directs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "Upon consideration of a motion for summary judgment, 'the judge's

function . . . is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Delaney*, 504 B.R. at 746 (quoting *Anderson*, 477 U.S. at 249). "[T]he court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Mex. Constr. & Paving v. Thompson (In re Thompson)*, 511 B.R. 20, 24 (Bankr. D. Conn. 2014) (quoting *Flaherty v. Lang*, 199 F.3d 607, 615 (2d Cir. 1999)).

At the summary judgment stage, the moving party must show there are no material issues of fact, and the court must consider all facts in the light most favorable to the non-moving party. *Conn. Ironworkers Emp'rs Ass'n v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98-99 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1547 (2018) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456, (1992); *Gemmink v. Jay Peak Inc.*, 807 F.3d 46, 48 (2d Cir. 2015)). Once the moving party has met its burden, the "party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Official Comm. of Unsecured Creditors of Affinity Health Care Mgmt., Inc. v. Wellner (In re Affinity Health Care Mgmt., Inc.)*, 499 B.R. 246, 251 (Bankr. D. Conn. 2013) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

## V.     DISCUSSION

### A.  The Doctrine of Collateral Estoppel

Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza*, 464 U.S. 154, 158 (1984); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66 (2d Cir. 2006). It is well-established that the doctrine of collateral estoppel applies in bankruptcy proceedings, and that the doctrine may be used to establish the non-dischargeability of a debt. *In re Snyder*, 939 F.3d 92,

100 (2d Cir. 2019) (citing *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006); *Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

"When determining the preclusive effect of a state court judgment, a court must apply the preclusive law of the rendering state." *Thompson*, 511 B.R. at 26 (quoting *Faraday v. Blanchette*, 596 F. Supp. 2d 508, 514 (D. Conn. 2009)). Under Connecticut law, "collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment." *Cumberland Farms, Inc. v. Town of Groton*, 262 Conn. 45, 58 (2002). To be subject to collateral estoppel, an issue must have been (1) "fully and fairly litigated," (2) "actually decided," (3) "necessary to the judgment" in the first action, and (4) "identical" to the issue to be decided in the second action. *See Faraday*, 596 F. Supp. 2d 508, 515 (citing *State v. Joyner*, 255 Conn. 477, 490 (2001); *Lighthouse Landings, Inc. v. Conn. Light & Power Co.*, 300 Conn. 325, 343 (2011)). "As the Supreme Court observed, relitigation will be barred where 'the issues presented by this litigation are in substance the same as those resolved' in the prior case." *Guo Zhong Wu v. Qiao Lin (In re Qiao Lin)*, 576 B.R. 32, 59 (Bankr. E.D.N.Y 2017) (quoting *Montana v. United States*, 440 U.S. 147, 155 (1979)). Direct identity of issues is not required; substantial identity will suffice. *Id.* The party seeking to utilize the doctrine of collateral estoppel bears the burden of proving the elements necessary for its application. *Automated Salvage Transp. Co. v. Swirsky (In re Swirsky)*, 372 B.R. 551, 562 (Bankr. D. Conn. 2006).

### B. The Preclusive Effect of the State Court Judgment

The Plaintiffs argues that because the State Court Judgment is entitled to preclusive effect under the doctrine of collateral estoppel, summary judgment should enter in their favor on both counts of the Complaint. The Court agrees.

The aim of the Bankruptcy Code is to provide a fresh start to the "honest but unfortunate" debtor. *See Cohen v. de la Cruz,* 523 U.S. 213, 217 (1998). Therefore, "while debts owed at the time of the debtor's bankruptcy filing are generally discharged, the Bankruptcy Code provides 'certain categories of nondischargeable debts that Congress has deemed should survive bankruptcy.'" *In re Tashlitsky*, 492 B.R. 640, 644 (Bankr. E.D.N.Y. 2013) (quoting *Giaimo v. DeTrano (In re DeTrano)*, 326 F.3d 319, 322 (2d Cir. 2003)). One such exception from discharge is a debt arising out of false pretenses, a false representation, or actual fraud. *See* 11 U.S.C. 523 § (a)(2)(A).

In order to prevail on a section 523(a)(2)(A) claim, the Plaintiffs must establish five elements: (1) the Defendant made a false representation; (2) at the time the representation was made, the Defendant knew it was false; (3) the Defendant made the representation with intent to deceive the Plaintiffs; (4) the Plaintiffs justifiably relied on the representation; and (5) the Plaintiffs sustained loss or damage as a proximate consequence of the false representation. *See In re Deutsch*, 575 B.R. 590, 599 (Bankr. S.D.N.Y. 2017). For the purposes of section 523(a)(2)(A), "a false representation means that '(1) the defendant made a false or misleading statement (2) with intent to deceive (3) in order for the plaintiff to turn over money or property to the defendant.'" *Id.* (quoting *Frishberg v. Janac (In re Janac)*, 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009)).

The State Court Judgment found that the Defendant was liable for intentional misrepresentation. Under Connecticut law, to establish liability for intentional misrepresentation, a plaintiff must prove the following five elements: (1) the defendant made a misrepresentation of fact; (2) that the defendant knew or should have known was false; (3) the misrepresentation was made to induce the plaintiff to act upon it; (4) the plaintiff reasonably relied on the misrepresentation; and (5) the plaintiff suffered pecuniary harm as a result. *Brown v. Otake*, 164 Conn. App. 686, 706, 138 A.3d 951, 963 (2016). "[A]t common law, fraudulent misrepresentation and intentional misrepresentation are the same tort." *Id.* at n.14 (quoting *Kramer v. Petisi,* 285 Conn. 674, 684 n. 9, 940 A.2d 800 (2008)). The elements of nondischargeability under section 523(a)(2)(A) "are essentially the same as the elements of fraud under Connecticut law." *See In re Bugnacki*, 439 B.R. 12, 25 (Bankr. D. Conn. 2010). Accordingly, there is a sufficient identity of issues between Count One of the Complaint and the State Court Judgment.

In addition, the elements of a section 523(a)(2)(A) claim were fully and fairly litigated in the State Court Action. The Defendant, who was represented by counsel, appeared and defended against the claims at trial and at the post-trial hearing on attorney's fees and punitive damages. The Defendant also obtained appellate review of the State Court Judgment.

Further, the elements of a section 523(a)(2)(A) claim were actually decided in the State Court Action and were necessary to the State Court Judgment. The jury was instructed on the required elements of an intentional misrepresentation claim, which are substantially identical to a section 523(a)(2)(A) claim. Specifically, the jury was instructed as follows:

> Now, in order to prevail on their claim of intentional misrepresentation, the plaintiffs must prove the following three elements by clear, precise, and unequivocal evidence: that a false representation was made by the defendant as a statement of fact; that the statement was known to be untrue when made by the

12

> defendant; and that the defendant made the false representation to induce the plaintiffs to rely on it.
>
> As I just stated, the plaintiffs must prove the existence of these—of these three elements by a standard of proof that is higher than the usual fair preponderance of the evidence. The higher standard requires the plaintiffs to prove these three elements by evidence that is clear, precise and unequivocal.
>
> Additionally, the plaintiffs must prove a fourth element… [T]he plaintiff must also prove that they relied on the false representation to their injury. This fourth element must be proven by the usual fair preponderance of the evidence standard.
>
> All four of the elements must be found in order for the plaintiffs to prevail on their claim against defendant Parrella for intentional misrepresentation.

*See* Exhibit M in support of the Motion for Summary Judgment.

The jury applied these instructions in deciding whether the Defendant was liable for an intentional misrepresentation, and the State Court Judgment incorporated the jury's finding that he was. In addition, where, as here, "a state court's determination of fraud—involving elements congruent with fraud under bankruptcy law—is established by a stricter standard, the considerations in favor of applying collateral estoppel are greatly enhanced." *See Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006) (citing *Grogan,* 498 U.S. at 284-85, 111 S.Ct. 654).

Because the State Court Judgment with respect to the intentional misrepresentation claim resolved all issues necessary to establish nondischargeability under section 523(a)(2)(A), collateral estoppel applies. As a result, the Plaintiffs are entitled to summary judgment on Count One of the Complaint.

The State Court Judgment also determined the Defendant was liable for violation of CUTPA based on his intentional representations regarding the continuation of the Plaintiffs' business after the merger. Because the State Court Judgment with respect to the CUTPA claim is based on the same facts that establish the Defendant's liability for the intentional misrepresentation claim, it follows that the debts on Count Two are likewise nondischargeable

under section 523(a)(2)(A). Therefore, summary judgment is appropriate with respect to Count Two of the Complaint.

The State Court Judgment contains awards of punitive damages and attorney's fees against the Defendant. The punitive damages are nondischargeable under section 523(a)(2)(A). *See In re Roberti*, 201 B.R. 614, 623 (Bankr. D. Conn. 1996) (discussing cases which address the issue of nondischargeability of punitive damages under section 523(a)(2)(A) and concluding such an award is nondischargeable under section 523(a)(2)(A)). The award of attorney's fees is likewise nondischargeable under section 523(a)(2)(A). The Supreme Court has found that "[w]hen construed in the context of the statute as a whole, then, § 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc., including an award of treble damages for the fraud." *Cohen*, 523 U.S. at 220. Therefore, any debt for "money, property, services, or ... credit, to the extent obtained by fraud encompasses any liability arising from money ... fraudulently obtained, including treble damages, attorneys' fees, and other relief that may exceed the value obtained by the debtor" is nondischargeable. *Id.* at 223. Since the Plaintiff's claims in this adversary proceeding are based on the Defendant's intentional misrepresentations, the entire claim is nondischargeable. *See In re Hambley*, 329 B.R. 382, 402-03 (Bankr. E.D.N.Y. 2005).

The Defendant asserts two affirmative defenses in the Answer. The Defendant bears the burden of proving each affirmative defense. *See F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir. 1994). Here, the Defendant has failed to establish the affirmative defenses. The Defendant has not provided any evidence that he has satisfied some of the State Court Judgment through a garnishment order, and the record before the Court supports the Plaintiffs' statement in their

56(a)(1) Statement of Undisputed Material Facts that the judgment remains wholly unsatisfied. *See* Proofs of Claim 9-1 and 10-1 in Case No. 18-51613.

With respect to the Defendant's second affirmative defense, that the principal damages of $113,855.00 constitute identical damages that should be allowed only once per plaintiff, the Court finds that the affirmative defense is partially inaccurate and, in any event, moot due to the Plaintiffs' actual claims. Jerrold Metcoff was awarded principal damages of $113,855.00 and David Wilson was awarded principal damages of $143,434.00. The Plaintiffs' Memorandum in Support of the Motion for Summary Judgment makes clear, however, that the compensatory damage award set forth in Counts Thirteen and Twenty-Four of the State Court Judgment is counted only once in the total debt each Plaintiff claims to be nondischargeable. Therefore, the second affirmative defense is without merit.

## VI.    CONCLUSION

For the reasons set forth above, the essential elements of a cause of action for non-dischargeability under section 523(a)(2)(A) were found in the State Court Action and there are no genuine issues of material fact to be tried in this adversary proceeding. The Plaintiffs are therefore entitled to a determination as a matter of law that the debt owed to them by the Defendant is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The Defendant's debt to the Plaintiff Jerrold Metcoff in the amount of $521,044.00 as found in the State Court Judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The Defendant's debt to the Plaintiff David Wilson in the amount of $550,623.00 as found in the State Court Judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

Accordingly, it is hereby

**ORDERED:** The Plaintiffs' Motion for Summary Judgment is GRANTED; and it is further

**ORDERED:** A separate judgment as to the non-dischargeability of the Defendant's debt pursuant to 11 U.S.C. § 523(a)(2)(A) will enter.

Dated at Bridgeport, Connecticut this 28th day of October, 2020.

*Julie A. Manning*
Chief United States Bankruptcy Judge
District of Connecticut